UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD FORTENBERRY,

       Plaintiff,                  Case No. 2:22-cv-12367

                                   District Judge F. Kay Behm
v.                             Magistrate Judge Kimberly G. Altman

AMY FUCIARELLI, TAMARA
KELLEY, JODI NAKATA, and
KRISTIN MAXSON,[1]

       Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 31)[2]

### I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Richard Fortenberry (Fortenberry), proceeding *pro se* and *in forma pauperis*, filed a complaint naming several Michigan Department of Correction (MDOC) medical providers and employees as defendants. (ECF No. 1). On March 8, 2023, the

---

[1] "JCS Healthcare" has been erroneously included as a defendant on the docket. JCS Healthcare has never been a named defendant in the case; it is merely the entity alleged to employ some of the named defendants. Upon ruling on this Report and Recommendation, the district judge should order that JCS Healthcare be removed from the docket as a defendant.

[2] Upon review of the parties' papers, the undersigned deemed this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

district judge issued an order of partial summary dismissal, dismissing all but one

defendant, Nurse Practitioner Amy Fuciarelli (Fuciarelli).  (ECF No. 13).

Thereafter, all pretrial matters were referred to the undersigned.  (ECF No. 16).

Following this, on June 16, 2023, Fortenberry filed an amended complaint as

of right against Fuciarelli, all of the defendants named in his original complaint,

and other MDOC medical providers and employees.  (ECF No. 21).  On July 20,

2023, the undersigned recommended that defendants Patricia Lamb (Lamb), Diane

Miller (Miller), K. Anderson (Anderson), Beth Fritz (Fritz), C. Jones (Jones),

Webb, Balwin, and Leslie be dismissed from the amended complaint under 28

U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim.  (ECF No. 22).

This recommendation was adopted, (ECF No. 23), leaving Fuciarelli, Tamara

Kelley, P.A. (Kelley), Nurse Jodi Nakata (Nakata), and Health Unit Manager

Kristin Maxson (Maxson), as named defendants.

Before the Court is Maxson and Nakata's motion for summary judgment on

the basis of exhaustion.  (ECF No. 31).  Fortenberry was ordered to respond to

defendants' motion by December 18, 2023, (ECF No. 35), but has not responded.

For the reasons that follow, the undersigned RECOMMENDS that the motion be

GRANTED and that Maxson and Nakata be DISMISSED WITHOUT

PREJUDICE.  If this recommendation is adopted, Fortenberry's case will continue

only against Fuciarelli and Kelley, both of whom have filed an answer to the

amended complaint.

## II.    Allegations

Fortenberry, a diabetic, alleges that he sent a kite[3] in September 2020, to JCS health care complaining of an ulcer in his toe.  (ECF No. 21, PageID.101).  He had been suffering from the toe injury for approximately five months prior to sending the kite, without receiving treatment.  (*Id.*, PageID.102).  Over a year later, in December 2021, he sent two kites to JCS health care regarding staff's refusal to administer his prescribed daily insulin dosage because he would not first allow staff to take a glucose reading.  (*Id.*).  He also sent a kite that month complaining of blurred vision, headaches, weight loss, and other problems due to not receiving insulin.  (*Id.*).

In February 2022, Fortenberry continued to request his prescribed insulin dose, and also questioned why he was not receiving proper medical care for his foot.  (*Id.*).  In July of that year, he renewed his request for foot care, questioned why he was not being sent to a podiatrist, and requested probiotics to treat his diabetes.  He was finally called in to see health care at Fuciarelli's request but was then placed in handcuffs and said to be a threat.  (*Id.*).  He alleges that this was done in retaliation for the grievances he had filed against health care.  (*Id.*).

---

[3] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance. *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

In August 2022, he sent kites again requesting to be seen for his toe and to see a podiatrist. (*Id.*). He also "made it clear" that he was not refusing treatment, but only seeking to follow the prescribed plan from his doctor. He "continued to ask Healthcare for proper treatment on his foot and did not get care as required by the doctor who prescribed proper care for [his] foot ulcer." (*Id.*).

In September 2022, Fortenberry finally received surgery on his foot. Afterward, Fuciarelli refused to issue him a wheelchair or any pain medications. (*Id.*, PageID.103). On September 6, 2022, Fuciarelli called Fortenberry into her office to examine his stitches. Fortenberry informed Fuciarelli that he was not to remove his bandages for 48 hours. At that time, Fuciarelli yelled at Fortenberry to leave her office, asked staff to come get him, and claimed that he was making a scene and needed to be escorted out. (*Id.*). She then retaliated against Fortenberry by writing "a fabricated misconduct [ticket] the next day, while still denying him a wheelchair and pain medication." (*Id.*).

Fortenberry alleges that he continued to have "constant stressful issues" with Fuciarelli through January 2023. (*Id.*). He also alleges that from August 2022 to January 2023, he made at least ten attempts to resolve the issue of his treatment with Maxson and Nakata but was "treated unfairly and less than human." (*Id.*).

Fortenberry alleges a "joint venture" to deny his required treatment. (*Id.*). He states that Kelley ordered staff not to give him his prescribed insulin dose out

of retaliation "because [Fortenberry] did not want to give a glucose reading three times a day." (*Id.*).  Nakata contributed to this deprivation by refusing to give him his insulin dose. (*Id.*).  Maxson assisted Kelley in not providing his insulin, and also assisted Fuciarelli in her retaliation by "ignoring his pleas for a resolution and/or a change of medical providers." (*Id.*).

### III.    Fortenberry's Failure to File a Response

The Sixth Circuit has said that "[e]ven when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380-81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." (quoting *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991))).  That said, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992).  "The court may rely on the moving party's unrebutted recitation of the evidence in

reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (6th Cir. 2000).

In light of the above, the undersigned will consider the merits of the motion even in the absence of a response.

## IV.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Fortenberry is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## V.     Exhaustion of Administrative Remedies

### A.     Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison

7

officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in

8

*Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at

94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

that correspond to all the required elements of a particular legal theory." *Burton v.

Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles

by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair

notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's

complaint."  *Id.*

## B.    Grievances and Hearings

Maxson and Nakata have attached Fortenberry's Step III Grievance Report

to their motion.  (ECF No. 31-3).  It shows all grievances that Fortenberry has filed

and pursued through Step III of the grievance process, along with an affidavit

stating that the report is true and accurate.  (*Id.*).  The Step III report contains two

relevant grievances, JCS-22-10-0886-28e (JCS-886) and JCS-22-09-0815-28c

(JCS-815).  (*Id.*, PageID.181).  Each Step III appeal was rejected for reasons that

will be described below.

Additionally, Maxson and Nakata have attached Fortenberry's Class II

Misconduct Hearing Report for the misconduct ticket that Fortenberry alleges was

issued in retaliation for seeking healthcare services.  (ECF No. 31-4).  The details

9

of Fortenberry's misconduct hearing report will be discussed further below as well.

C.    Analysis

1.    Failure to Exhaust Administrative Remedies Prior to Original Complaint

The Sixth Circuit has previously explained that "a prisoner must exhaust all available administrative remedies before filing his action," meaning that a prisoner "cannot exhaust these remedies during the pendency of the action." *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002). If he did not, then his claims are not considered exhausted. *See Al-Shimary v. Winn*, No. 2:21-cv-10403, 2022 WL 3590357, at *5 (E.D. Mich. July 28, 2022), *report and recommendation adopted*, 2022 WL 3588017 (E.D. Mich. Aug. 22, 2022) ("The PLRA requires exhaustion of all available administrative remedies *before* filing suit.") (emphasis in original); *see also Beal v. Washington*, No. 1:21-cv-522, 2022 WL 17094179, at *4 (W.D. Mich. Oct. 18, 2022), *report and recommendation adopted*, 2022 WL 17093505 (W.D. Mich. Nov. 20, 2022) ("Beal failed to complete the exhaustion process by waiting to receive a Step III response, or allowing the 60-business-day period to expire, before filing his complaint in federal court."); *Walker v. Simon*, No. 1:22-cv-848, 2022 WL 17253612, at *2 (W.D. Mich. Oct. 18, 2022), *report and recommendation adopted*, 2022 WL 17250249 (W.D. Mich. Nov. 28, 2022) (recommending summary judgment because the plaintiff filed his complaint "before he had received Step III responses from the MDOC for the two grievances reflected in his

10

Step III report and before the time allowed under the MDOC grievance policy for review of Step III appeals had expired"); *Mims v. Simon*, No. 1:22-cv-323, 2022 WL 16702166, at *2 (W.D. Mich. Oct. 18, 2022), *report and recommendation adopted*, 2022 WL 16650131 (W.D. Mich. Nov. 3, 2022) (same).

Maxson and Nakata argue that under *Mattox v. Edelman*, 851 F.3d 583, 591-95 (6th Cir. 2017), Fortenberry cannot amend his complaint to add subsequently exhausted claims unless the original complaint included at least one exhausted claim. Fortenberry's Step III Grievance Report shows that he filed relevant grievances on September 13, 2022, and October 18, 2022. (ECF No. 31-3, PageID.181). The MDOC mailed Step III responses on those grievances to him on October 27, 2022, and March 14, 2023, respectively. (*Id.*). Both of these dates come after the date Fortenberry filed his original complaint, October 5, 2022. (ECF No. 1).

Fortenberry also had a Class II Misconduct Hearing on September 10, 2022, in which he was accused of disobeying a direct order to leave the healthcare area. (ECF No. 31-4). Fortenberry pled not guilty and stated that he "was just trying to get [his] questions answered." (*Id.*). In the amended complaint, Fortenberry argues that this ticket was retaliatory in nature, (ECF No. 21, PageID.103), but the misconduct hearing report does not reflect that he raised retaliation during the hearing, (ECF No. 31-4).

11

Under *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011),
Fortenberry can only exhaust his retaliation claim by raising it at the misconduct
hearing itself before bringing suit. Furthermore, Fortenberry would have to appeal
the guilty finding before bringing suit, which he would not have had time to do
before the date on which his original complaint was filed. Therefore, because
Fortenberry failed to bring an exhausted claim in the original complaint, he is
barred under *Mattox* from bringing new claims against Maxson and Nakata in an
amended complaint, even if those claims were subsequently exhausted. For that
reason, his claims against Maxson and Nakata should be dismissed without
prejudice.

2.     MDOC's Rejection of Grievances for Failure to Follow Procedures

Maxson and Nakata also argue that Fortenberry's relevant grievances, JCS-
886 and JCS-815, were rejected by for failure to abide by MDOC procedures, and
therefore cannot exhaust his remedies. Properly rejected grievances do not exhaust
an inmate's administrative remedies. *Woodford*, 548 U.S. at 95. But "the Court is
not required to blindly accept the state's application of the procedural rule[s]."
*Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan.
30, 2012), *report and recommendation adopted in relevant part*, 2012 WL
3151594 (E.D. Mich. Aug. 2, 2012).

JCS-886 was rejected for Fortenberry's failure to include his Step I

grievance in his Step III response.  (ECF No. 31-3, PageID.184).  The relevant

MDOC Policy Directive cited for this rejection is MDOC P.D. 03.02.130.  (*Id.*).

Maxson and Nakata have attached that directive to their motion.  (ECF No. 31-2).

However, neither Maxson and Nakata nor the Step III rejection cite to a specific

paragraph of the directive that would sustain a rejection on this basis.  The only

seemingly relevant provision states that "Grievances *shall not be rejected* or denied

solely because the prisoner has not included with his/her grievance exhibits or

other documents related to the grievance[.]"  (ECF No. 31-2, PageID.170, MDOC

P.D. 03.02.130 ¶ H (emphasis added)).

     "[C]ourts reviewing the above language have uniformly concluded the

failure to include grievance responses in the Step III appeal does not preclude

proper exhaustion."  *Margosian v. Martison*, No. 1:21-CV-1061, 2023 WL

1442426, at *2 (W.D. Mich. Feb. 1, 2023) (collecting cases).  *Margosian* and the

cases cited therein, as well as MDOC P.D. 03.02.130 ¶ H, apply with full and equal

force to the *unstated* requirement that a grievant attach his Step I grievance to a

Step III appeal.  Not only is this requirement absent from the policy directive cited

by the Step III reviewer and Maxson and Nakata, but the only relevant paragraph

of the policy directive says that failure to attach documents to a grievance is not a

reason to reject a grievance.  Therefore, the MDOC's rejection of JCS-886 does

not provide cause to find Fortenberry's claims unexhausted.  However, as

explained above, Fortenberry's claims are unexhausted because he filed the
original complaint without having fully exhausted any of the surviving claims
therein.

JCS-815 was rejected at Steps I, II, and III for grieving "multiple issues."
(ECF No. 31-3, PageID.187-191).  While never fully explained, the rejection was
likely based on Fortenberry's "on-going" "date of incident," and general
complaints regarding retaliation for former grievances.  (*Id.*, PageID.190).

MDOC P.D. 03.02.130 ¶ J(1) says that a grievances may be rejected if it is
"vague, illegible, or contains multiple unrelated issues."  The grievance responses
did not state, and Maxson and Nakata do not argue, that the "multiple issues" in
Fortenberry's grievance were "unrelated."  Thus, the argument that the MDOC's
rejection of this grievance was proper has been waived.  *See Brindley v. McCullen*,
61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully
developed and argued to be waived").  However, Maxson and Nakata are correct
that JCS-815 does not exhaust any claims against *them*, as they are not named in
the grievance.  As noted above, grievances must contain the dates, times, places,
and *names* of all those involved.  *Reed-Bey v. Pramstaller*, 603 F.3d at 324.
In some circumstances where the MDOC does not reject a grievance for failing to
name the culprits, this argument can be deemed waived.  However, in this case the
grievance identified Fuciarelli as the culprit, meaning the MDOC had no reason to

reject the grievance for this reason.

Maxson and Nakata also argue that, while Fortenberry references a grievance JCS-22-12-1027-28f (JCS-1027) in his amended complaint, this grievance was appealed to Step III *after* the filing of the amended complaint and therefore cannot exhaust those claims. They are correct; as explained above, Fortenberry had not received a Step III response on a relevant grievance before filing his original complaint. Therefore, he failed to exhaust his administrative remedies and cannot bring later claims that were subsequently exhausted against Maxson and Nakata in this case. His claims against them should be dismissed without prejudice.

## VI.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Maxson and Nakata's unopposed motion for summary judgment on the basis of exhaustion, (ECF No. 31), be GRANTED and that they be DISMISSED WITHOUT PREJUDICE.

If this recommendation is adopted, Fortenberry's case would continue against only Fuciarelli and Kelley, both of whom have answered the amended complaint. Upon the filing of this Report and Recommendation, a scheduling order pertaining to Fortenberry and these two defendants will be separately entered.

Dated: March 5, 2024          s/Kimberly G. Altman
Detroit, Michigan             KIMBERLY G. ALTMAN
                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

16

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 5, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

17